UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN WATKINS, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:21-0153 |
| v. | : | (JUDGE MANNION) |
| JOHN WETZEL, et al., | : | |
| Defendants | : | |

**MEMORANDUM**

**I. Background**

Plaintiff, Bryan Watkins, an inmate confined at the State Correctional Institution, Dallas ("SCI-Dallas"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). The named Defendants are John Wetzel, Department of Corrections Secretary; Kevin Ransom, SCI-Dallas Superintendent; Wellpath, LLC; Jorge Dominic, Wellpath Chief Executive Officer; and Dr. Scott Prince. Id. Plaintiff seeks compensatory and punitive damages for Defendants' alleged failure, from March 2020 to the present, to (1) require all staff to socially distance and wear masks while at work and home; (2) to require all staff to be tested daily for COVID-19 before entering the prison; and (3) to separate COVID-

1

19 positive inmates from those who tested negative. Id. He claims that as a result, he contracted COVID-19 on December 23, 2020. Id.

Presently before the Court are Defendants' motions to dismiss Plaintiff's complaint. (Docs. 21, 23). Because Defendants' motion asserted dismissal based on Plaintiff's failure to exhaust his administrative remedies, on December 17, 2021, an Order was entered informing the parties that, pursuant to Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018), the Court would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (Doc. 27). The Court afforded Plaintiff an opportunity to respond to the Defendants' allegations regarding exhaustion. Id. To date, Plaintiff has neither filed a brief in opposition to Defendants' motions, nor requested an enlargement of time within which to so. For the reasons set forth below, this Court will grant Defendants' motion to dismiss Plaintiff's complaint for Plaintiff's failure to exhaust his administrative remedies.

## II. Standard of Review

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a

3

discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (*per curiam*).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.' " Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure §1357 (3d Ed. 2004)); see also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

4

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### III.  Statement of Facts

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804. See www.cor.state.pa.us, DOC Policies, DC-ADM 804, Inmate Grievance System Policy ("DC-ADM 804"). This policy establishes the Consolidated Inmate Grievance Review System, through which inmates can seek to resolve issues relating to their incarceration. Id. The first step in the inmate grievance process is initial review. Id. Grievances must be submitted for initial review within 15 working days after the event upon which the grievance is based. Id. After

5

initial review, the inmate may appeal to the superintendent of their institution. Id. Upon completion of the initial review and the appeal from the initial review, an inmate may seek final review with the Chief of the Secretary's Office of Inmate Grievances and Appeals (SOIGA). Id.

A request of the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") for all grievances appealed by Watkins to final review revealed the following response: "We [SOIGA] actually don't have anything on file for this inmate." (Doc. 23-2 at 1, SOIGA response).

IV. **Discussion**

Under the PLRA, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

6

are available are exhausted. 42 U.S.C. §1997(e). The exhaustion requirement is mandatory. Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"). Moreover, while Plaintiff was released from prison after filing the above-captioned case (Doc. No. 10), he is still bound by the exhaustion requirement because he has raised claims concerning events that occurred prior to his release. See Ahmed v. Dragovich, 297 F.3d 201, 210 (3d Cir. 2002).

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to §1997e's exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. Id. Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Courts have concluded that inmates who fail to fully, or timely, complete the prison

7

grievance process are barred from subsequently litigating claims in federal court. See e.g., Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Warman, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the

8

courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. Warman, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievance procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003); see also Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

The Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. See Ross v. Blake, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple

9

dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." Id. Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. Id. at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." Rinaldi v. United States, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." Id. at 269.

Finally, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). Once defendants present evidence of a prisoner's failure to exhaust, the burden of proof shifts to the inmate to show that exhaustion occurred or that

10

administrative remedies were unavailable. Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018). "Both the [United States] Supreme Court and [the Third Circuit Court of Appeals] have rejected judge-made exceptions to the PLRA." Downey, v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020). District courts may not "excuse [a prisoner's] failure to exhaust." Ross, 136 S. Ct. at 1856 (rejecting a "special circumstance" exception). Likewise, district courts do not have the authority "to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhius v. Reno, 204 F.3d 65, 71 (3d Cir. 2000).

Defendants have properly raised the matter of exhaustion of administrative remedies with respect to Plaintiff's claims. They argue that Plaintiff has failed to appeal any grievance to final review before the Chief of the Secretary's Office of Inmate Grievances and Appeals. Plaintiff does refute the defense that he failed to properly exhaust the claims before the Court. The PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements. Moreover, Plaintiff has not presented any evidence to suggest that the administrative remedy procedure was


rendered unavailable to him. The Court, therefore, will grant Defendants' motions on the basis that Plaintiff failed to properly exhaust his administrative remedies.

## V. Conclusion

For the reasons set forth above, the Court will grant the Defendants' motion to dismiss for Plaintiff's failure to exhaust administrative remedies.

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**DATE: January 4, 2022**
21-153-01